IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Jose Rosas Hernandez, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Case No.  25-cv-15013 |
| v. | ) | |
| | ) | Judge John Robert Blakey |
| Sam Olson, et al., | ) | |
| | ) | |
| Respondents. | ) | |

## ORDER

Because Petitioner's mandatory detention without a custody redetermination hearing pending removal proceedings is contrary to the law, this Court grants the petition for a writ of habeas corpus [1], and expects that, within a reasonable time, Respondents shall, consistent with this order, either: (1) effect removal proceedings consistent with the INA and its implementing regulations; (2) provide Petitioner with a custody redetermination hearing under 8 U.S.C. § 1226(a); or (3) otherwise release Petitioner from custody (under reasonable conditions of supervision).  If Respondents fail to do one of these three options <u>within five days of this order</u>, then they must, <u>within seven days of this order</u>, file a report with supporting materials showing cause why this Court should not exercise its equitable authority and order Petitioner's immediate release from custody, pending removal proceedings.  This Court sets a status hearing on December 30, 2025, at 11:00 a.m. in Courtroom 1203.

## STATEMENT

### A.     Background & Procedural History

Based upon the record, the parties agree that the Petitioner Jose Rosas Hernandez is not a citizen of the United States, nor a legal resident alien, and that Petitioner is not otherwise lawfully present in the United States on a visa.  Instead, Petitioner is a citizen of Mexico who has resided in the United States without authorization since at least 2000, and Respondents represent (and Petitioner does not dispute) that Petitioner "entered the United States without inspection" in 2000. [14] at 1–2.  Prior to detention, Petitioner lived and worked in the Chicago area.

On October 22, 2025, federal agents approached Petitioner while he was sitting in his car in a Menard's parking lot; they broke the window of his vehicle, dragged him out of the vehicle, and beat him.  The agents then brought Petitioner to UChicago Medicine AdventHealth GlenOaks Hospital for treatment, and subsequently brought

him to the Immigration and Customs Enforcement (ICE) processing Center in Broadview, Illinois. After some additional medical treatment, ICE transferred Petitioner to Clay County Jail in Brazil, Indiana; then Miami Correctional Facility in Bunker Hill, Indiana; then Clinton County Jail in Frankfort, Indiana; and finally back to Illinois on December 10, 2025. Petitioner has remained in detention since his initial arrest. ICE did not set a bond.

Petitioner has been charged with having entered the United States without inspection under 8 U.S.C. § 1182(a)(6)(A)(i). Based upon this designation, ICE, the Department of Homeland Security, and the Executive Office for Immigration Review, have determined that Petitioner remains subject to mandatory detention pending removal, under Respondents' recent interpretation of 8 U.S.C. §1225(b)(2).[1]

Based upon the facts of this case, however, Petitioner claims that this mandatory detention pending removal violates the Immigration and Nationality Act ("INA") and the Fifth Amendment's Due Process Clause. On December 10, 2025, Petitioner filed a petition under 28 U.S.C. § 2241, seeking an order requiring Respondents to release him, or in the alternative, to provide Petitioner with a custody redetermination hearing pursuant to 8 U.S.C. § 1226(a). *See* [1].

Respondents filed a preliminary brief [11], as ordered, and then responded to the petition itself on December 17, 2025, *see* [14]. According to Respondents, the Department of Homeland Security issued a notice to appear for removal proceedings, and Petitioner is currently scheduled to appear before an Immigration Judge on December 19, 2025. Respondents also continue to contend that the Petitioner remains subject to mandatory detention while awaiting that immigration hearing and removal determination, *see* [11], [14].

## B.    Legal Authority & Discussion

A district court may grant a writ of habeas corpus to any person who demonstrates he is "in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2241. The individual in custody bears the burden of proving that his detention is unlawful. *See, e.g., Walker v. Johnston*, 312 U.S. 275, 286 (1941). Here, the Petitioner claims that his mandatory detention (without a custody redetermination by the immigration judge) violates both the INA and the due process clause of the Fifth Amendment under the facts of this case.

As to the INA, the parties invoke two different sections of the INA relating to detention. Petitioner contends that this case falls within 8 U.S.C. § 1226(a) and thus Petitioner remains entitled to a bond hearing; while Respondents claim this case is

---

[1] Respondents do not contend that Petitioner falls within the parameters of § 1226(c).

governed by § 1225(b)(2), and thus, Petitioner is subject to mandatory detention. As Respondents note, since the Board of Immigration Appeals' ruling in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), federal courts across the country have been asked to consider whether foreign nationals who entered the United States without inspection remain eligible for bond hearings in immigration court.

Beyond a few meritless jurisdictional arguments about the ability of this Court to review Petitioner's habeas claim,[2] Respondents argue that Petitioner, a foreign national who was never lawfully admitted into the United States, does not qualify for bond under the INA; and thus, Petitioner's mandatory detention does not violate due process. *See* [14].[3] The Respondents, however, fail to cite any controlling case law for their new statutory construction of the INA.

This failure is not surprising, because prior case law, including binding decisions from the Supreme Court have long assumed, as part of their analysis and discussion of the INA on other issues, that § 1226(a) and § 1225(b) are read properly under the Respondent's prior (now abandoned) construction of INA.

The Supreme Court's decision in *Jennings v. Rodriguez*, 583 U.S. 281 (2018), illustrates this point clearly. There, the Court discussed both § 1225 and § 1226 and noted that the two sections generally govern different categories of "aliens" and include different provisions concerning detention and bond hearings. The Court observed that § 1225 comes into play "at the Nation's borders and ports of entry" and "applies primarily to aliens seeking entry into the United States ('applicants for admission' in the language of the statute)." *Id.* at 286–87, 297. "Applicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)": with regard to detention, "aliens claiming a credible fear of persecution under § 1225(b)(1) 'shall be detained for further consideration of the

---

[2] This Court rejects Respondents' various jurisdictional arguments for the same reasons other courts have rejected them. *See, e.g., Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018); *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020); *Nielsen v. Preap*, 586 U.S. 392, 399, 402 (2019); *See, also Diaz v. Olson,* No. 25 CV 12141, 2025 WL 3022170, at *2 (N.D. Ill. Oct. 29, 2025) (finding that neither § 1252(a)(2)(B)(ii), § 1252(b)(9), nor § 1252(g) strips the court of jurisdiction in these circumstances); *Patel v. Crowley*, No. 25 C 11180, 2025 WL 2996787, at *3 (N.D. Ill. Oct. 24, 2025) (same); *Miguel v. Noem*, No. 25 C 11137, 2025 WL 2976480, at *3 (N.D. Ill. Oct. 21, 2025) (same); *Ochoa Ochoa v. Noem, et al.,* No. 25-cv-10865, 2025 WL 2938779, at *3 (N.D. Ill. Oct. 16, 2025) (same). Likewise, because the parties agree that the petition was filed when the Petitioner was detained in this district, jurisdiction remains proper here, despite any subsequent transfer of Petitioner to another location within the United States. *See, e.g., Gamboa v. Daniels*, 26 F.4th 410, 414 (7th Cir. 2022) ("Gamboa's proper filing of his § 2241 petition in the district where he was incarcerated at the time vests us with jurisdiction over Gamboa's appeal.") (citing *In re Hall*, 988 F.3d 376, 378 (7th Cir. 2021)).

[3] Assuming good faith on behalf of the parties, this Court notes that the Respondents' new interpretation of the INA is not without some support. *See Chavez v. Noem*, No. Casse No. 25-CV-02325-CAB-SBC, 2025 WL 2730228, at *5 (S.D. Cal. Sept. 24, 2025); Mejia Olalde v. Noem, No. 25 C 168, 2025 WL 3131942 (E.D. Mo. Nov. 10, 2025) (denying habeas relief); *but see*, Ruiz Melesio v. Olson, No. 25 C 13291 (N.D. Ill. Nov. 17, 2025).

application for asylum'"; and "aliens falling within the scope of § 1225(b)(2) 'shall be detained for a removal proceeding.'" *Id.* Thus, "read most naturally," the Court held, §§ 1225(b)(1) and (b)(2) "mandate detention of applicants for admission until certain proceedings have concluded." *Id.* Neither § 1225(b)(1) nor § 1225(b)(2) "says anything whatsoever about bond hearings." *Id.* In contrast, "§ 1226 applies to *aliens already present* in the United States" and "generally governs the process of arresting and detaining that group of aliens pending their removal." *Jennings*, 583 U.S. at 288, 303 (emphasis added). Thus, § 1226(a) "creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings"; § 1226(a) also permits the Attorney General "to release those aliens on bond, 'except as provided in subsection (c)'"—which, in turn, requires the Attorney General to "take into custody any alien who falls into one of the enumerated categories involving criminal offenses and terrorist activities." *Id.* Implicit in this discussion in *Jennings* is the notion (long held by the executive branch prior to *Matter of Yajure Hurtado*) that noncitizens already in the country are properly detained pursuant to § 1226(a) rather than § 1225(b)(2)(A), and that they are thus entitled to bond hearings.

The Seventh Circuit just endorsed this conclusion. *See Castanon-Nava v. U.S. Dep't of Homeland Sec.*, No. 25-3050, 2025 WL 3552514, at *8–9 (7th Cir. Dec. 11, 2025). ("Based upon the text and structure of the two provisions, we believe that Plaintiffs have the better argument on the current record . . . Defendants are not likely to succeed on the merits of their argument that those individuals, whom ICE arrested in Chicago without a warrant, are subject to mandatory detention under § 1225(b)(2)(A).")

Given the current state of the law, this Court cannot adopt Respondent's new construction of the INA. Quite simply, a trial court does not paint on a blank canvas, and in the absence of binding authority from the Supreme Court (and now contrary authority from the Seventh Circuit), it must reject Respondent's new theory. Furthermore, since the facts of Petitioner's case fall squarely under § 1226(a), not § 1225(b), Petitioner qualifies for discretionary detention, and subjecting Petitioner to mandatory detention under § 1225(b) thus remains contrary to the INA.[4] Indeed, the undisputed portions of the record provide no evidence to suggest that Petitioner was

---

[4] The result reached here remains consistent with the overall consensus of trial courts in this district and across the country. *See, e.g., Miguel v. Noem, at al.*, No. 25-cv-11137, 2025 WL 2976480, at *1 (N.D. Ill. Oct. 21, 2025) (Alonso, J.) ("this Court joins numerous other district courts which have found that noncitizens already in the country are properly detained pursuant to § 1226(a) rather than § 1225(b)(2)(A), and that these noncitizens are thus entitled to bond hearings.") (listing cases in this district and in others); *Ochoa Ochoa v. Noem, et al.,* No. 25-cv-10865, 2025 WL 2938779, at * 8 (N.D. Ill. Oct. 16, 2025) (Jenkins, J.) (finding that "Petitioner's detention without an individualized custody determination violates the INA and the Due Process Clause of the Fifth Amendment").

"seeking entry" into the United States when immigration officers encountered and detained Petitioner.[5]

## C. Conclusion

Because Petitioner's mandatory detention without a custody redetermination hearing pending removal proceedings is contrary to the law as set forth above, this Court grants the petition for a writ of habeas corpus [1], and expects that, within a reasonable time, Respondents shall, consistent with this order, either: (1) effect removal proceedings consistent with the INA and its implementing regulations; (2) provide Petitioner with a custody redetermination hearing under 8 U.S.C. § 1226(a); or (3) otherwise release Petitioner from custody (under reasonable conditions of supervision). If Respondents fail to do one of these three options <u>with five days of this order</u>, then they must, <u>within seven days of this order</u>, file a report with supporting materials showing cause why this Court should not exercise its equitable authority and order Petitioner's immediate release from custody, pending removal proceedings.

This Court sets a status hearing on December 30, 2025 at 11:00 a.m. in Courtroom 1203.

Dated: December 18, 2025                    Entered:

_____
John Robert Blakey
United States District Judge

---

[5] On the contrary, Petitioner has been residing in the United States for 25 years and working in Chicago for more than a decade, [1] at 8; Respondents concede that Petitioner entered the United States in 2000, [14] at 2. Given such facts (and having determined that Petitioner's mandatory detention without a custody redetermination pending removal remains unlawful under the INA), this Court need not consider whether his detention also runs contrary to the due process clause. 28 U.S.C. § 2241 (a district court may grant a writ of habeas corpus to any person who demonstrates he is "in custody in violation of the Constitution *or* laws . . . of the United States.") (emphasis added).